The MID–ATLANTIC POWER SUP-PLY ASSOCIATION and Clean Air Council, Inc., Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 17, 2000.

Decided July 10, 2000.

Joseph A. Dworetzky, Philadelphia, for petitioners.

Andrew S. Tubbs, Harrisburg, for respondent.

Anthony C. DeCusatis, Philadelphia, for intervenor, PECO Energy Co.

Tanya J. McCloskey, Harrisburg, for intervenor, Office of Consumer Advocate.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

FRIEDMAN, Judge.

The Mid–Atlantic Power Supply Association (Mid–Atlantic) and Clean Air Council, Inc. (the Clean Air Council) petition for review of the May 19, 1999 order of the Pennsylvania Public Utility Commission (PUC). Two paragraphs of the PUC's order are especially relevant here. Paragraph 1 of the order states that PECO Energy Company (PECO) "shall refrain from ... marketing practices which promote, solicit and advertise Provider of Last Resort [PLR [1]] Service over competi-

---

1. The Electricity Generation Customer Choice and Competition Act (Customer Choice Act), 66 Pa.C.S. §§ 2801–2812, requires electric utilities to provide open access over their transmission and distribution systems so that competitive electric generation suppliers can sell electricity directly to consumers. *See* section 2802(14) of the Customer Choice Act, 66

tive alternatives and which deceptively and inaccurately portray, communicate or infer [PLR] service as a competitive service at this time." Paragraph 2 of the order refers the record of the proceeding to the Commonwealth of Pennsylvania's Office of Attorney General (Attorney General) pursuant to section 2811 of the Electricity Generation Customer Choice and Competition Act (Customer Choice Act), 66 Pa.C.S. § 2811.[2] We affirm.

On October 6, 1998, Mid–Atlantic filed a complaint with the PUC alleging that PECO had engaged in deceptive, false and misleading marketing activities in promoting its PLR service. Mid–Atlantic claimed that PECO's conduct violated the Customer Choice Act, which is part of the Public Utility Code,[3] other provisions of the Public Utility Code and certain PUC orders.[4]

Pa.C.S. § 2802(14). Electric utilities that provide their facilities for the transmission and distribution of electricity are "electric distribution companies." Section 2803 of the Customer Choice Act, 66 Pa.C.S. § 2803. Entities that sell electricity to consumers utilizing the transmission and distribution facilities of electric distribution companies are "electric generation suppliers." *Id.*

PECO is an electric distribution company and, as such, is a provider of last resort. *See* section 2802(16) of the Customer Choice Act, 66 Pa.C.S. § 2802(16). This means that, "[I]f a customer contracts for electric energy and it is not delivered or if a customer does not choose an alternative electric generation supplier, [PECO] shall acquire electric energy at prevailing market prices to serve that customer and shall recover fully all reasonable costs." Section 2807(e)(3) of the Customer Choice Act, 66 Pa.C.S. § 2807(e)(3).

2. The pertinent provisions of section 2811 state that: (1) the PUC shall monitor the market for the supply and distribution of electricity to retail customers and "take steps as set forth in this section to prevent anticompetitive ... conduct ...," 66 Pa.C.S. § 2811(a); (2) the PUC shall investigate the impact of anticompetitive conduct on "the proper functioning of a fully competitive retail electricity market," 66 Pa.C.S. § 2811(b); (3) if the PUC has reason to believe that anticompetitive conduct "is preventing the retail electricity customers ... from obtaining the benefits of a properly functioning and workable competitive retail electricity market," the PUC shall refer its findings to the Attorney General or an appropriate federal agency, 66 Pa.C.S.

Mid–Atlantic sought an order directing PECO: (1) to cease and desist from PLR marketing, absent PUC approval; (2) to provide electric generation suppliers with pertinent information·about the customers who received PECO's PLR marketing materials; and (3) to send a corrective follow-up letter to those customers. (R.R. at 81a.)

On October 15, 1998, the Clean Air Council filed a complaint against PECO, making essentially the same allegations. On October 26, 1998, the Office of Consumer Advocate (OCA) filed a notice of intervention and a response to Mid–Atlantic's petition and complaint. On November 19, 1998, the PUC adopted Interim Guidelines for the advertising of PLR service by electric distribution companies.[5] (*See* R.R. at

§ 2811(d); however, (4) "[n]othing in this section shall restrict the right of any party to pursue any other remedy available to it under [the Public Utility Code]," 66 Pa.C.S. § 2811(f).

3. 66 Pa.C.S. §§ 101–3316. Mid–Atlantic points out in its complaint that section 1501 of the Public Utility Code requires that public utilities provide adequate "service" to the public.· 66 Pa.C.S. § 1501. (*See* R.R. at 69a.) Section 102 of the Public Utility Code defines "service" as "any and all acts done, rendered, or performed ... by public utilities ... in the performance of their duties under [the Public Utility Code]." 66 Pa.C.S. § 102. In marketing their services, electric distribution companies, like PECO, have a duty to provide "adequate and accurate customer information to enable customers to make informed choices regarding the purchase of all electricity services offered by that provider." 66 Pa.C.S. § 2807(d)(2).

4. Mid–Atlantic refers to the PUC's February 27, 1998 order establishing the Consumer Education Board (Consumer Education Order), (*see* R.R. at 39a–40a), and the PUC's May 14, 1998 order approving PECO's restructuring plan (Restructuring Plan Approval Order), (*see* R.R. at 54a–59a).

5. The Interim Guidelines state that electric ·distribution companies shall not engage in false, deceptive or misleading advertising; may not use their customer mailing lists for direct advertising of PLR service; and may

265a–67a, 281a–85a.) On December 10, 1998, Mid–Atlantic filed a Petition for Emergency Order, asserting that PECO was continuing the violations alleged in the initial complaint and, in addition, was violating the PUC's Interim Guidelines. (*See* R.R. at 274a.)

An administrative law judge (ALJ) consolidated the proceedings and, after holding hearings on the matter, issued a recommended decision. A threshold issue addressed by the ALJ was whether section 2811 of the Customer Choice Act limits the jurisdiction of the PUC in this case. The ALJ recognized that section 2811 authorizes the PUC to investigate anticompetitive conduct and to refer such matters to the Attorney General. However, the ALJ also noted that, under section 2811(f), a party is entitled to pursue any other remedy available to it under the Public Utility Code. *See* 66 Pa.C.S. § 2811(f). Thus, the ALJ recommended that the PUC issue a cease and desist order pursuant to the Public Utility Code *and* refer the matter to the Attorney General pursuant to section 2811 of the Customer Choice Act. (R.R. at 418a, 454a.) PECO, Mid–Atlantic, the Clean Air Council and the OCA filed exceptions and replies thereto with the PUC.

In rendering its decision, the PUC determined that PECO's PLR advertising

campaign created confusion regarding customer choice and was inconsistent with PECO's commitment to cooperate with the PUC's consumer education program.[6] (PUC's 5/19/99 op. at 31; *see* R.R. at 39a, 57a.) Thus, the PUC ordered that PECO "shall refrain from its current marketing practices which promote, solicit and advertise [PLR service] over competitive alternatives and which deceptively and inaccurately portray, communicate or infer [PLR service] as a competitive service at this time." (PUC's 5/19/99 op. at 42.) However, the PUC did not decide whether PECO's PLR marketing activities violated the PUC's Interim Guidelines, which prohibited electric distribution companies, like PECO, from engaging in "false, deceptive or misleading advertising...." (PUC's 5/19/99 op. at 38; *see* R.R. at 267a.) The PUC referred that question to the Attorney General because: (1) section 2811 of the Act "was drafted specifically to limit the [PUC's] remedial authority in this area;" (2) the Attorney General has "more extensive expertise in this area;" and (3) there exists a Memorandum of Understanding between the PUC and the Attorney General recognizing the Attorney General's enforcement authority under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Consumer Protection Law).[7] (PUC's 5/19/99 op. at 34, 35.)

not disparage the electric service of competing electric generation suppliers by false facts or misleading statements. (R.R. at 267a.)

6. The PUC's February 27, 1998 Consumer Education Order stated that one of the goals of consumer education was to create "an environment to minimize confusion." (R.R. at 33a.) The PUC explained that PECO exercises its competitive electric generation supplier function through Exelon, an affiliated company; thus, consumers may choose to receive electric generation service from PECO by selecting Exelon as their electric generation supplier. (PUC's 5/19/99 op. at 30.) However, PECO was marketing PLR service as if consumers had a choice as to the identity of their PLR service provider when, in fact, consumers had no such choice. (PUC's 5/19/99 op. at 32.) Indeed, section 2807(e)(3) of the Customer Choice Act mandates that, during

the transition period, PECO provide PLR service for *all* customers within its jurisdiction. 66 Pa.C.S. § 2807(e)(3).

7. Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201–1 to 201–9.3. Section 4 of the Consumer Protection Law, 73 P.S. § 201–4, states:

Whenever the Attorney General ... has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action ... against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

Section 3 of the Consumer Protection Act declares unlawful the acts defined by section 2 of the Consumer Protection Act. 73 P.S.

PECO subsequently filed a petition for clarification and/or reconsideration, pointing out that Paragraph 1 of the PUC's order, which directs PECO to refrain from its "current" marketing practices, could be read as a cease and desist order. PECO maintained, *inter alia*, that such a reading assumes incorrectly that PECO has not changed its advertising practices. (PUC's 6/17/99 op. at 4–5.) In granting the petition, the PUC stated that the order "addresses marketing practices which were the subject matter of the complaint proceeding, i.e., those [materials] published before December 30, 1998. PECO's current PLR advertising promotional and/or marketing practices, must not be deceptive and/or inaccurate." (PUC's 6/17/99 op. at 7.)

On appeal to this court,[8] Mid–Atlantic, the Clean Air Council and the OCA argue that the PUC erred: (1) in concluding that section 2811 of the Act divests the PUC of any remedial authority in this case; (2) in transferring this case to the Attorney General; and (3) in failing to provide a remedy under other provisions of the Public Utility Code.

We believe that Mid–Atlantic, the Clean Air Council and the OCA have misconstrued the PUC's order. In its opinion, the PUC explained that its jurisdiction over this case does *not* lie wholly within section 2811 of the Act. (PUC's 5/19/99 op. at 37.)

> On the contrary, the [PUC's] jurisdiction spans the breadth of the Public Utility Code, 66 Pa.C.S. §§ 101–3316. Concurrent jurisdiction with [the Attorney General under section 2811 of the Act] does *not* divest the [PUC] of jurisdiction retained or exercised under another section of the [Public Utility] Code.

§ 201–3. One of the acts defined in section 2 is engaging in "deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201–2(4)(xxi).

8. Our scope of review is limited to determining whether the PUC's findings and conclu-

(PUC's 5/19/99 op. at 37) (emphasis added). Thus, in Paragraph 1 of its order, the PUC directed PECO to refrain from its past PLR marketing activities and to ensure that its current PLR advertising is not deceptive or inaccurate. Although the PUC did not discuss in its opinion the legal basis for Paragraph 1 of its order, it appears to us that the PUC relied upon section 501(a) of the Public Utility Code, 66 Pa.C.S. § 501(a), which states that the PUC "shall have full power and authority ... to enforce, execute and carry out, by its ... orders, ... the provisions of [the Public Utility Code]."

Section 2807(d)(2) of the Customer Choice Act, which is a provision of the Public Utility Code, states that the PUC shall require each "marketer ... to provide adequate and accurate customer information to enable customers to make informed choices regarding the purchase of all electricity services offered by that provider." 66 Pa.C.S. § 2807(d)(2). Because PECO's PLR marketing activities created confusion regarding customer choice, PECO's customer information was *not* adequate to enable its customers to make an informed choice about the purchase of services. Thus, Paragraph 1 of the PUC's order was appropriate here to carry out a provision of the Public Utility Code. Because the PUC provided such a remedy in addition to its referral to the Attorney General, there is no basis for the arguments raised here on appeal.

Accordingly, we affirm.

## ORDER

AND NOW, this 10th day of July, 2000, the order of the Pennsylvania Public Utili-

sions were supported by substantial evidence, whether there was an error of law and whether there was a violation of constitutional rights. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

ty Commission, dated May 19, 1999, is affirmed.